**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| KMEL, MGT,<br><br>Plaintiff,<br><br>v.<br><br>ARTHUR ZULICK, et al.<br><br>Defendants. | CIVIL ACTION NO. 3:26-CV-00092<br><br>(MEHALCHICK, J.) |

## MEMORANDUM

Before the Court is a report and recommendation filed by Magistrate Judge Martin C. Carlson recommending that the Court grant Defendants Kate Best, Ninti Mateen, Shirley Wood, Michelle Warsaw, and Todd W. Weitzmann's (together, "County Defendants") motion to dismiss (Doc. 17) and deny Plaintiff KMEL, MGT's ("KMEL") motion for a preliminary injunction. (Doc. 10; Doc. 29, at 23). On May 1, 2026, KMEL filed objections to the report. (Doc. 32). Based on the Court's review of the relevant filings along with the report, KMEL's objections (Doc. 32) are **OVERRULED**, and the report (Doc. 29) will be **ADOPTED IN ITS ENTIRETY**.

### I. BACKGROUND AND PROCEDURAL HISTORY

KMEL initiated this action on November 17, 2025, by filing a complaint in the Eastern District of Pennsylvania seeking declaratory relief, injunctive relief, and damages for "trespass and deprivation of secured property rights arising from actions taken without lawful authority." (Doc. 2, at 1-2). On January 1, 2026, KMEL filed an emergency motion for a

preliminary injunction, seeking a stay order over several state court matters.[1] (Doc. 10, at 2-3). On January 15, 2026, the Honorable John M. Gallagher ordered this case transferred to the Middle District of Pennsylvania. (Doc. 13). Upon transfer to the Middle District, the case was assigned to Magistrate Judge Phillip Caraballo and reassigned to Magistrate Judge Martin C. Carlson. However, KMEL did not consent to Magistrate Judge jurisdiction, so on April 1, 2026, the case was reassigned to the undersigned and referred to Magistrate Judge Carlson.

On January 22, 2026, the County Defendants moved to dismiss KMEL's complaint for failure to state a claim. (Doc. 17). On February 25, 2026, KMEL filed a brief in opposition to the County Defendants' motion to dismiss. (Doc. 23). The County Defendants did not file a timely reply brief. On April 6, 2026, Judge Carlson entered the instant report recommending that the Court grant the County Defendants' motion to dismiss and deny KMEL's motion for preliminary injunction. (Doc. 29). On May 1, 2026, KMEL filed an objection to the report. (Doc. 32). Accordingly, this matter is ripe and ready for disposition.

## II. Legal Standard

"A district court may 'designate a magistrate judge to conduct hearings, including evidentiary hearings, and to submit to a judge of the court proposed findings of fact and recommendations for the disposition' of certain matters pending before the court." *Brown v. Astrue*, 649 F.3d 193, 195 (3d Cir. 2011) (quoting 28 U.S.C. § 636(b)(1)(B)). Within fourteen days of being served a report and recommendation, "any party may serve and file written

[1] The Court agrees with Judge Carlson's conclusion that, while captioned as a motion to stay, the pleading asks the Court to intervene and stay state court proceedings, so the Court will more aptly consider the pleading as a motion for preliminary injunction. (Doc. 29, at 1 n. 1).

objections to such proposed findings and recommendations as provided by rules of court." 28 U.S.C. § 636(b)(1). When a party timely files objections, the district court is to conduct a *de novo* review of the challenged portions of the Magistrate Judge's findings unless the objection is "not timely or not specific." *Goney v. Clark*, 749 F.2d 5, 6–7 (3d Cir.1984); 28 U.S.C. § 636(b)(1). The Court may then "accept, reject, or modify, in whole or in part, the findings and recommendations." 28 U.S.C. § 636(b)(1). "Although the standard is *de novo*, the extent of review is committed to the sound discretion of the district judge, and the court may rely on the recommendations of the magistrate judge to the extent it deems proper." *Rahman v. Gartley*, No. CV 3:23-363, 2024 WL 555894, at *1 (M.D. Pa. Feb. 12, 2024) (citing *United v. Raddatz*, 447 U.S. 667, 676 (1980)).

## III. Discussion

In the report, Judge Carlson determined that the Anti-Injunction Act bars the Court from enjoining KMEL's state court proceedings. (Doc. 29, at 10). Judge Carlson further determined that the *Rooker-Feldman* doctrine prevents the Court from reviewing the validity of past state court orders from KMEL's various state court proceedings. (Doc. 29, at 19). Accordingly, Judge Carlson recommends that KMEL's complaint, seeking the Court to enjoin the underlying state court proceedings and prescribe the manner in which the state court must address KMEL's concerns, be dismissed. (Doc. 29, at 7). Judge Carlson also recommends that KMEL's motion for a preliminary injunction should be denied because KMEL failed to show a likelihood of success on the merits. (Doc. 29, at 23). After reviewing the relevant filings, the Court finds no error in Judge Carlson's conclusions. The Court finds Judge Carlson's analysis to be well-reasoned and supported by the applicable law. KMEL objects to Judge Carlson's conclusions that the underlying state court proceedings include a

domestic relations matter, that the complaint alleges violations of 42 U.S.C. § 1983, that the state court judges and court staff performing their judicial and core ministerial functions have judicial and quasi-judicial immunity, that the Anti-Injunction Act and the *Rooker-Feldman* doctrine bar relief, that the complaint should be dismissed pursuant to rule 12(b)(6), and that leave to amend is futile.[2] (Doc. 32, at 5-12). The Court will address each of KMEL's objections in turn.

### A. JUDGE CARLSON WAS AUTHORIZED TO ISSUE THE INSTANT REPORT AND RECOMMENDATION.

Preliminarily, KMEL contends that Judge Carlson lacked the authority to issue the report because KMEL expressly withheld consent to the case being adjudicated by a magistrate judge. (Doc. 32, at 2). KMEL further avers that Judge Caraballo's granting of KMEL's motion for leave to proceed *in forma pauperis* was unauthorized and improper. (Doc. 32, at 4).

Pursuant to Local Rule 72.1, "[a] magistrate judge may determine any preliminary matters; require parties, attorney and witnesses to appear; require briefs, proofs, and argument; and conduct any hearing, conference or other proceeding the magistrate judge

---

[2] The Court notes that KMEL also generally objects to Judge Carlson entering the instant report three months after KMEL filed the motion for preliminary injunction and that the report does not address the difference between Article I and Article III courts. (Doc. 32, at 5, 8-9). KMEL seems to mistakenly believe that state court judges in the Monroe County Court of Common Pleas are Article I administrative law judges. (Doc. 32, at 8-9). Local Rule 72.3 requires that "written objections . . . shall specifically identify the portions of the proposed findings, recommendations or report to which objection is made and the basis for such objections." If a petitioner makes general objections, review is properly limited to determining whether there is clear error or manifest injustice in the report. *Boomer v. Lewis*, 3:06-CV-0850, 2009 WL 2900778, at *1 (M.D. Pa. 2009) (citing *Shields v. Astrue*, No. 3:CV–07–417, 2008 WL 4186951, at *6, *9 (M.D. Pa. Sept. 8, 2008)). Accordingly, in reviewing the instant report for clear error or manifest injustice, the Court need not address KMEL's above general objections. M.D. Pa. L.R. 72.3; *see Boomer v. Lewis*, 2009 WL 2900778, at *1; *Shields v. Astrue*, 2008 WL 4186951, at *6, *9.

deems appropriate in performing his or her duties." M.D. Pa. L.R. 72.1(a). A magistrate judge in the Middle District of Pennsylvania may, with consent of the parties, "conduct any or all proceedings in a civil matter and order entry of judgment in the matter." M.D. Pa. L.R. 72.1(b); *see* 28 U.S.C. § 636(c)(1). Without consent of the parties, a magistrate judge "is authorized to exercise all the judicial authority that is provided for by law for a magistrate judge." M.D. Pa. L.R. 73.1(d).

28 U.S.C. § 636(b)(1)(B) provides that a federal district judge may designate a magistrate judge to submit to the district judge proposed findings of fact and recommendations for the disposition of motions including motions for injunctive relief, to dismiss for failure to state a claim upon which relief can be granted, and to involuntarily dismiss an action. Within fourteen days after being served with a copy of the magistrate judge's report, any party may serve and file written objections to the magistrate judge's proposed findings and recommendations in accordance with the rules of the Court. 28 U.S.C. § 636(b)(1)(C). Then, the assigned district judge "shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made." 28 U.S.C. § 636(b)(1)(C). The district judge "may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1)(C).

While KMEL does not consent to magistrate judge jurisdiction, the undersigned's referral of this matter to Judge Carlson to submit proposed findings of fact and recommendations for the disposition of KMEL's motion for injunctive relief and the County Defendants' motion to dismiss for failure to state a claim is authorized by 28 U.S.C. § 636(b)(1)(B) and local rules 72 and 73. M.D. Pa. L.R. 72, 73. Judge Caraballo's review of

KMEL's motion for leave to proceed *in forma pauperis* was likewise authorized by 28 U.S.C. § 636(b)(1)(A) and local rule 72.1. M.D. Pa. L.R. 72.1(a).

B. JUDGE CARLSON DID NOT ERR IN CONCLUDING THAT THE UNDERLYING PROCEEDINGS INCLUDE A DIVORCE MATTER.

KMEL contends that the report mischaracterizes the complaint as arising out of a divorce and property dispute pending in the Court of Common Pleas of Monroe County. (Doc. 29, at 1; Doc. 32, at 5). KMEL avers that the complaint concerns deprivation of constitutional property rights and specifies that the complaint does not seek a divorce decree, alimony, or a child custody determination. (Doc. 32, at 5). However, in the complaint, KMEL provides that the underlying state court matters, for which KMEL seeks injunctive relief, are a divorce action and "multiple ancillary recordings and sibling cases." (Doc. 2, at 7). In the report, Judge Carlson does not find that KMEL seeks a divorce decree, alimony, or child custody. (*See* Doc. 29). Judge Carlson provides that the instant case arises from a divorce and property dispute in Monroe County, in accordance with the facts alleged in KMEL's complaint. (Doc. 2, at 7; Doc. 29, at 1). The Court agrees with Judge Carlson's conclusion that KMEL's complaint arises out of a divorce and property dispute pending in the Court of Common Pleas of Monroe County. (Doc. 29, at 1).

C. JUDGE CARLSON DID NOT ERR IN CONCLUDING THAT THE COMPLAINT ALLEGES VIOLATIONS OF 42 U.S.C. § 1983.

KMEL contends that the report erroneously assumes that the complaint is grounded in a section 1983 claim. (Doc. 32, at 6). KMEL provides that, instead, the Civil Rights Act of 1866 is the "operative statutory authority in this matter." (Doc. 32, at 6).

The Civil Rights Act of 1866 provides for racial equality in areas of both contract and property rights. *See* 42 U.S.C. §§ 1981, 1982. The Civil Rights Act of 1866 represents

"Congress' first attempt to ensure equal rights for the freedmen following the formal abolition of slavery effected by the Thirteenth Amendment." *Gen. Bldg. Contractors Ass'n, Inc. v. Pennsylvania*, 458 U.S. 375, 389 (1982). The Civil Rights Act of 1866 "constituted an initial blueprint" for the Fourteenth Amendment, which Congress proposed, in part, to incorporate the guarantees of the Civil Rights Act of 1866 into the "organic law of the land." *General Bldg. Contractors Ass'n, Inc.*, 458 U.S. at 385. "Following ratification of the Fourteenth Amendment, Congress passed what has come to be known as the Enforcement Act of 1870," and "Section 16 of that Act contains essentially the language that now appears in [42 U.S.C.] § 1981." *General Bldg. Contractors Ass'n, Inc.*, 458 U.S. at 385. The Enforcement Act of 1870 reenacted the Civil Rights Act of 1866, with minor language changes:

> Section 16 differed from § 1 of the 1866 Act in at least two respects. First, where § 1 of the 1866 Act extended its guarantees to "citizens, of every race and color," § 16 of the 1870 Act—and § 1981—protects "all persons." *See United States v. Wong Kim Ark*, 169 U.S. 649, 675, 18 S.Ct. 456, 467, 42 L.Ed. 890 (1898). Second, the 1870 Act omitted language contained in the 1866 Act, and eventually codified as § 1982, guaranteeing property rights equivalent to those enjoyed by white citizens.
>
> *Gen. Bldg. Contractors Ass'n, Inc.*, 458 U.S. at 385-86; *see State of Georgia v. Rachel*, 384 U.S. 780, 790-91 (1966).

Section 1983 is the vehicle by which private citizens may seek redress for violations of federal constitutional rights committed by state officials. *See* 42 U.S.C. § 1983. The statute states, in pertinent part:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

42 U.S.C. § 1983.

"Section 1983 is not a source of substantive rights," but is merely a means through which "to vindicate violations of federal law committed by state actors." *Pappas v. City of Lebanon*, 331 F. Supp. 2d 311, 315 (M.D. Pa. 2004) (citing *Gonzaga Univ. v. Doe*, 536 U.S. 273, 284-85 (2002)). To allege a § 1983 claim, a plaintiff must demonstrate that the defendants, acting under color of state law, deprived the plaintiff of a right secured by the United States Constitution. *Mark v. Borough of Hatboro*, 51 F.3d 1137, 1141 (3d Cir. 1995). Courts can liberally construe that a *pro se* complaint has been brought under 42 U.S.C. § 1983, even if the plaintiff does not specifically cite to section 1983. *Weaver v. Wilcox,* 650 F.2d 22, 26 (3d Cir.1981) (liberally construing *pro se* complaint against state actors as if brought under § 1983); *see Estelle v. Gamble*, 429 U.S. 97, 106 (1976) (finding that a document filed *pro se* should be liberally construed).

In the complaint, KMEL alleges that Judge Arthur L. Zulick, Judge C. Daniel Higgins, Jr., and the County Defendants deprived KMEL of property rights via actions taken without lawful authority. (Doc. 2, at 2). KMEL's allegations more closely resemble a section 1983 claim, in which defendants, acting under color of state law, deprived the plaintiff of a right secured by the United States Constitution, than a discrimination claim under the Civil Rights Act of 1866. *See Mark*, 51 F.3d at 1141; *see General Bldg. Contractors Ass'n, Inc.*, 458 U.S. at 385. Accordingly, the Court finds that Judge Carlson's liberal construing of KMEL's complaint to include a Section 1983 claim to be proper. *See Estelle*, 429 U.S. at 106; *see Weaver,* 650 F.2d at 26.

### D. JUDGE CARLSON DID NOT ERR IN CONCLUDING THAT JUDGES AND COURT OFFICERS PERFORMING THEIR JUDICIAL AND CORE MINISTERIAL FUNCTIONS HAVE JUDICIAL AND QUASI-JUDICIAL IMMUNITY.

KMEL contends that Judge Zulick and Judge Higgins Jr. acted without jurisdiction and therefore are not shielded by judicial immunity. (Doc. 32, at 7). KMEL also contends that the County Defendants are "statutory officers with no immunity for fraud, ministerial obstruction, or ultra vires acts." (Doc. 32, at 7). KMEL avers that the County Defendants should not have immunity because fraud, swindling, taking of property, discrimination, and obstruction of lawful submissions are not judicial functions. (Doc. 32, at 8). KMEL provides that "[m]inisterial acts performed negligently or fraudulently receive no immunity protection." (Doc. 32, at 7).

A judge performing their duties "has absolute immunity from suit and will not be liable for his [or her] judicial acts." *Azubuko v. Royal*, 443 F.3d 302, 303 (3d Cir. 2006). A judge is not stripped of immunity because they took an action in error, malice, or excess of authority. Instead, a judge will be subject to liability only when they have acted "in the clear absence of all jurisdiction.'" *Stump v. Sparkman*, 435 U.S. 349, 356-57 (1978); *Azubuko*, 443 F.3d at 303.

Judges are also "absolutely 'immune from suit under section 1983 for monetary damages arising from their judicial acts.'" *Mikhail v. Kahn*, 991 F. Supp. 2d 596, 660 (E.D. Pa. 2015) (citing *Gallas v. Supreme Court of Pa.*, 211 F.3d 760, 768 (3d Cir. 2000)). In a section 1983 suit for damages, as long as a judge's actions are taken in their judicial capacity and the judge has a semblance of jurisdiction over the acts, the judge will have judicial immunity for those acts. *Mikhail*, 991 F. Supp. 2d at 660 (citing *Forrester v. White*, 484 U.S. 219, 225-27 (1988). Additionally, "injunctive relief shall not be granted" in an action brought against "a judicial officer for an act or omission taken in such officer's judicial capacity . . . unless a declaratory decree was violated or declaratory relief was unavailable." 42 U.S.C. § 1983; *Mikhail*, 991 F. Supp. 2d at 661. Even then, a plaintiff must demonstrate that adequate

remedies, such as appellate review were unavailable. *Mikhail*, 991 F. Supp. 2d at 661 (citing *Pulliam v. Allen*, 466 U.S. 522, 543 (1984)).

Absolute immunity also attaches to people who perform functions integral to the judicial process, also known as "quasi-judicial" functions. *Burns v. Reed*, 500 U.S. 478, 484 (1991); *Marcedes v. Barrett*, 453 F.2d 391 (3d Cir. 1971). Several courts have held that tasks performed by prothonotaries and other court staff are shielded by quasi-judicial immunity. *Conklin v. Warrington Twp.*, No. 1:06-CV-2245, 2008 WL 2704629, at *9 (M.D. Pa. July 7, 2008) (collecting cases). To determine whether an individual should be afforded quasi-judicial immunity, courts look at whether the individual "perform[s] functions closely associated with the judicial process." *Cleavinger v. Saxner*, 474 U.S. 193, 200 (1985); *Tucker v. I'Jama*, 173 F. App'x 970, 971 (3d Cir. 2006). "Quasi-judicial officers who act in accordance with their duties or at the direction of a judicial officer are immune from suit." *Alexander v. McMonagle*, No. 99-1298, 1999 WL 1210844, at *1 (E.D. Pa. Dec. 9, 1999).

In the complaint, KMEL fails to set forth any facts showing that Judge Zulick or Judge Higgins Jr. acted in the absence of jurisdiction or that court officers, including the County Defendants, acted outside of their usual duties during KMEL's underlying state court proceedings. KMEL also fails to allege facts that would support a finding that a declaratory decree was violated or that declaratory relief was unavailable in the state courts. In the complaint, KMEL merely provides conclusory statements that Judge Zulick and Judge Higgins Jr. or their staff engaged in conduct that was ministerial and administrative rather than judicial. (Doc. 2, at 5). These conclusory statements do not give rise to a plausible claim that Judge Zulick, Judge Higgins Jr., the County Defendants, or other court officials acted outside the scope of judicial or quasi-judicial immunity. *See Mikhail*, 991 F. Supp. 2d at 660;

*see Forrester*, 484 U.S. at 225-27; *see Gallas*, 211 F.3d at 768; *see Burns*, 500 U.S. at 484; *see Marcedes*, 453 F.2d at 391. Accordingly, the Court agrees with Judge Carlson's conclusion that Judge Zulick, Judge Higgins Jr., the County Defendants, and all other court officers named in KMEL's complaint were cloaked in immunity for their judicial and quasi-judicial functions. (Doc. 29, at 13).

E. JUDGE CARLSON DID NOT ERR IN CONCLUDING THAT THE ANTI-INJUNCTION ACT AND THE *ROOKER-FELDMAN* DOCTRINE BAR RELIEF.

KMEL contends that the Anti-Injunction Act does not bar relief because KMEL's claims fall within the first recognized exception to the Anti-Injunction Act, that an injunction is expressly authorized by an Act of Congress. (Doc. 32, at 9). KMEL also contends that the *Rooker-Feldman* doctrine does not apply because no final judgment exists in KMEL's underlying state court proceedings. (Doc. 32, at 10). KMEL provides that the possession order issued by Judge Zulick was a void act, taken in the complete absence of jurisdiction, and as such has no legal existence and cannot constitute a final state court judgment for the purposes of the *Rooker-Feldman* analysis. (Doc. 31, at 10).

The Anti-Injunction Act provides that "[a] court of the United States may not grant an injunction to stay proceedings in a state court except as expressly authorized by Act of Congress, or where necessary in aid of its jurisdiction, or to protect or effectuate its judgments." 28 U.S.C. § 2283. These three statutorily prescribed exceptions "are to be construed narrowly." *In re Diet Drugs*, 282 F.3d 220, 233 (3d Cir. 2002); *Norton v. Adams*, No. 25-2361, 2025 WL 2231797, at *2 (3d Cir. Aug. 1, 2025). Following the principles of comity, the Supreme Court has found that "any doubts as to the propriety of a federal injunction against state court proceedings should be resolved in favor of permitting the state courts to proceed in an orderly fashion to finally determine the controversy." *Atl. Coast Line R.R. Co. v.*

*Bhd. of Locomotive Eng'rs*, 398 U.S. 281, 297 (1970). "[T]he Anti-Injunction Act prohibits federal courts from interfering with state court proceedings, such as the divorce proceeding . . ." *Reid v. Luna*, No. 23-CV-4818, 2023 WL 8720666, at *1 (E.D. Pa. Dec. 18, 2023) (citing *In re Prudential Ins. Co. of Am. Sales Practices Litig.*, 314 F.3d 99, 103 (3d Cir. 2002); *Szymonik v. Connecticut*, 807 F. App'x 97, 100 (2d Cir. 2020); *Collins v. Dallas Cnty. Texas*, No. 18-1558, 2019 WL 148455, at *3 (D. Del. Jan 9, 2019)).

The *Rooker-Feldman* doctrine "is a judicially-created doctrine that bars lower federal courts from reviewing certain state court actions." *Goodson v. Maggi*, 797 F. Supp. 2d 587, 597 (W.D. Pa. 2011). The doctrine arose in the wake of two Supreme Court cases, *Rooker v. Fidelity Trust Co.*, 263 U.S. 413 (1923), and *District of Columbia Court of Appeals v. Feldman*, 460 U.S. 462 (1983), and stands for the proposition that "a United States District Court has no subject matter jurisdiction to review final judgments of a state court, because only the Supreme Court has jurisdiction to review state court judgments under 28 U.S.C. § 1257." *Conklin v. Anthou*, No. 1:10-CV-2501, 2012 WL 124989, at *2 (M.D. Pa. Jan. 17, 2012), *aff'd*, 495 F. App'x 257 (3d Cir. 2012) (citing *Goodson*, 797 F. Supp. 2d at 597; *Feldman*, 460 U.S. at 482). The *Rooker-Feldman* doctrine "applies even where the challenges to the state court judgment allege that the state court's action was unconstitutional, such as a deprivation of due process and equal protection rights." *Goodson*, 797 F. Supp. 2d at 597 (*citing Feldman*, 460 U.S. at 485-86). Claims by "state-court losers complaining of injuries caused by state-court judgments" are barred from bringing suit in federal court by the *Rooker-Feldman* doctrine. *Great Western Mining & Mineral Co. v. Fox Rothschild LLP*, 615 F.3d 159, 166 (3d Cir. 2010); *Geness v. Cox*, 902 F.3d 344, 360 (3d Cir. 2018).

Where underlying state proceedings are ongoing, federal courts should abstain from reviewing state court actions pursuant to the *Younger* abstention doctrine. "Abstention under *Younger* is appropriate where certain state law proceedings are pending, including some domestic relations disputes." *Dixon v. Kuhn*, 257 F. App'x 553, 555 (3d Cir. 2007) (citing *Yang v. Tsui*, 416 F.3d 199 (3d Cir. 2005)). In order for a district court to abstain under *Younger*, three criteria must be met: "(1) ongoing state proceedings that are judicial in nature; (2) the state proceedings implicate important state interests; and (3) the state proceedings provide an adequate opportunity to present federal claims." *Dixon*, 257 F. App'x at 555. "The *Younger* doctrine is based on comity and the notion that comity makes it undesirable to permit a party access to a federal court when he is currently involved in state proceedings where he can secure an adjudication of his constitutional claim." *FOCUS v. Allegheny Cnty. Court of Common Pleas*, 75 F.3d 834, 844 (3d Cir. 1996).

As explained in detail in *supra* section III. E., a section 1983 injunction targeting state court judges and court officers is not expressly authorized by an Act of Congress, and as such does not fall into the first Anti-Injunction Act exception, because when carrying out judicial or quasi-judicial functions, state court judges and state court officers are cloaked in immunity. Accordingly, the Court agrees with Judge Carlson's conclusion that KMEL has failed to state a viable section 1983 constitutional tort claim, and, therefore, the Court is not expressly authorized by Act of Congress to enjoin KMEL's underlying state court proceedings. (Doc. 29, at 19).

Likewise, the Court agrees with Judge Carlson that the *Rooker-Feldman* doctrine bars the Court from reviewing KMEL's state court proceedings. (Doc. 29, at 19). The record indicates that the orders in KMEL's underlying state court proceedings are final, and the

*Rooker-Feldman* doctrine bars the Court from reviewing these final judgments.[3] (Doc. 2, at 7-8); *see Great Western Mining & Mineral Co.*, 615 F.3d at 166; *see Geness*, 902 F.3d at 360. Even if KMEL's underlying state court proceedings are ongoing, both the Anti-Injunction Act and the *Younger* abstention doctrine bar the Court from enjoining or otherwise reviewing the underlying state court actions. *See In re Diet Drugs*, 282 F.3d at 233; *see FOCUS*, 75 F.3d at 844. While KMEL is clearly unhappy with the underlying state court proceedings, filing suit in federal court is not the proper avenue for an appeal of the divorce and related property actions. The Court agrees with Judge Carlson's conclusion that the Anti-Injunction Act and the *Rooker-Feldman* doctrine bar the Court from reviewing state court orders and granting injunctive relief. (Doc. 29, at 19-21).

F. JUDGE CARLSON DID NOT ERR IN CONCLUDING THAT THE COMPLAINT SHOULD BE DISMISSED PURSUANT TO RULE 12(B)(6) AND THAT LEAVE TO AMEND IS FUTILE.

KMEL objects to Judge Carlson's application of Federal Rule of Civil Procedure 12(b)(6) as a "dispositive mechanism" against the complaint, which KMEL avers is "grounded in the Constitution and supported by documented public records." (Doc. 32, at 10-11). KMEL also objects to Judge Carlson's recommendation that granting leave to amend would be futile. (Doc. 32, at 11). KMEL contends that leave to amend would not be futile because the complaint alleges constitutional claims that are "legally cognizable and factually documented." (Doc. 32, at 12).

---

[3] KMEL provides that the reason the state court orders are not final is because the state court judges were acting without jurisdiction. (Doc. 32, at 10-11). However, Pennsylvania state courts have exclusive, original subject matter jurisdiction in divorce proceedings. 23 Pa. C.S. § 3104(a). Additionally, Pennsylvania state courts have the authority to determine, in conjunction with decrees granting divorce, the disposition of property rights between parties, the partition of property or accounting between parties, and property settlements. 23 Pa. C.S. § 3104(a)(1), (4). In adjudicating KMEL's underlying divorce and property disputes, Judges Zulick and Higgins Jr. were plainly acting with jurisdiction.

Rule 12(b)(6) of the Federal Rules of Civil Procedure authorizes a defendant to move to dismiss for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). To assess the sufficiency of a complaint on a Rule 12(b)(6) motion, a court must first take note of the elements a plaintiff must plead to state a claim, then identify mere conclusions that are not entitled to the assumption of truth, and finally determine whether the complaint's factual allegations, taken as true, could plausibly satisfy the elements of the legal claim. *Burtch v. Milberg Factors, Inc.*, 662 F.3d 212, 221 (3d Cir. 2011).

The Court also has an on-going statutory obligation to conduct a screening review of *pro se* complaints brought by plaintiffs given leave to proceed *in forma pauperis.* In executing this screening function, the Court shall dismiss a complaint at any time if it is determined that the action fails to state a claim upon which relief may be granted. 28 U.S.C. § 1915(e)(2). In performing this screening function, a district court applies the same standard applied to motions to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure. *Tourscher v. McCullough*, 184 F.3d 236, 240 (3d Cir. 1999).

The Third Circuit has instructed that if a complaint is vulnerable to dismissal for failure to state a claim, the district court must permit a curative amendment unless an amendment would be inequitable or futile. *See Grayson v. Mayview State Hosp.*, 293 F.3d 103, 108 (3d Cir. 2002); *Shane v. Fauver*, 213 F.3d 113, 116-17 (3d Cir. 2000). The Third Circuit has also acknowledged that a district court has "substantial leeway in deciding whether to grant leave to amend." *Lake v. Arnold*, 232 F.3d 360, 373 (3d Cir. 2000).

Judge Carlson is authorized to determine whether KMEL's complaint stated a claim upon which relief could be granted under 28 U.S.C. § 1915(e)(2) and Federal Rule of Civil Procedure 12(b)(6). As explained in detail in *supra* sections III. E. & F., taking the complaint's

factual allegations as true, as the Court must, KMEL's complaint fails to plausibly satisfy the elements of a section 1983 claim or provide an exception to the Anti-Injunction Act. *See Burtch*, 662 F.3d at 221. Given the complaint's numerous, substantial flaws and the inability of the Court to review or interfere with the underlying state court proceedings, the Court agrees with Judge Carlson's conclusion that KMEL's complaint cannot be cured by more artful pleading. (Doc. 29, at 23); *see Lake*, 232 F.3d at 373.

## IV. CONCLUSION

The Court agrees with the report's sound reasoning and discerns no error of law. Accordingly, **IT IS HEREBY ORDERED THAT** KMEL's objections (Doc. 32) are **OVERRULED** and the Judge Carlson's report and recommendation (Doc. 29) is **ADOPTED IN ITS ENTIRETY** as the opinion of the Court. KMEL's motion for a preliminary injunction (Doc. 10) is **DENIED**. The County Defendants' motion to dismiss (Doc. 17) is **GRANTED**, and KMEL's complaint (Doc. 2) is **DISMISSED with prejudice**. The clerk of court is directed to **CLOSE** this matter.

**Dated: September 15, 2026**

s/ Karoline Mehalchick
**KAROLINE MEHALCHICK**
**United States District Judge**